MERCHANTS' BANK OF ROCHESTER *et al. v.* THALHEIMER *et al.*

(*Supreme Court, General Term, Fifth Department.* October 19, 1888.)

1. FRAUDULENT CONVEYANCES—PARENT TO CHILD—CONSIDERATION.

A father who was engaged in buying notes and mortgages, and loaning money, conveyed land to his son, receiving from him, in consideration therefor, notes which his son held against him to the amount of about the value of the land. The undisputed testimony of both, that the notes were given for money loaned by the son to the father, was corroborated by a letter from the son to the father, stating that he sent certain sums of money, which his father would have to guaranty to him. This money did not appear to have been loaned in the name of the son, and some of it appeared to have been invested in land in the father's name. *Held* that, though there were discrepancies between the father and son as to dates, a finding that there was no consideration for the conveyance was error.[1]

2. SAME—INTENT OF GRANTEE.

The voluntary assignment by a father to his son of a cause of action, which the son does not accept, does not charge the latter with any inference of fraud.

3. SAME.

Evidence that the son was liable for the father on a note to his mother, and that at the time of the conveyance the son had, at the father's request, delivered certain promissory notes to his mother, and that some of them had been paid, should be admitted, as bearing on the son's good faith.[2]

Appeal from special term, Monroe county.

Action by Merchants' Bank of Rochester and others against Ignatz Thalheimer, and Yette Thalheimer, his wife, and William Thalheimer, their son, to set aside conveyances, an assignment, and a judgment for fraud. Judgment for plaintiffs, and defendants appeal.

Argued before HAIGHT, BRADLEY, and DWIGHT, JJ.

*J. & L. Van Voorhis,* for appellants. *William H. Cogswell,* for respondents.

HAIGHT, J. This action was brought by the plaintiffs, as judgment creditors of the defendant Ignatz Thalheimer, to set aside certain conveyances of real estate made to his son William Thalheimer, as being in fraud of the rights of creditors; also an assignment of a certain cause of action which the defendant Ignatz Thalheimer had against the firm of Hays & Thalheimer; also a judgment in favor of Yette Thalheimer against the defendant Ignatz Thalheimer. It appears that the defendant Ignatz Thalheimer had indorsed for the firm of Hays & Thalheimer to the amount of $12,000, and had also loaned that firm about $15,000; that on the 7th day of July, 1884, he learned that the firm was insolvent. He thereupon brought an action against Hays & Thalheimer, in which he procured an attachment to be levied upon the goods of that firm. He also conveyed to his son William Thalheimer the real estate in question, and executed an assignment to William of his claim against

---

[1] That transactions between relatives, whereby creditors of one may lose their claims, will be closely scrutinized, see Bartlett v. Cheesbrough, (Neb.) 37 N. W. Rep. 652, and note; Marshall v. Strange, (Ky.) 9 S. W. Rep. 250, and note; Wylie v. Posey, (Tex.) Id. 87, and note.

[2] On the subject of good faith and knowledge on the part of the grantee, in actions to set aside conveyances as fraudulent, see Halverson v. Brown, (Iowa,) 38 N. W. Rep. 123, and note; Loos v. Wilkinson, (N. Y.) 18 N. E. Rep. 99; Insurance Co. v. Lent, (Iowa,) 39 N. W. Rep. 826, and note.

Hays & Thalheimer; but the court has found that the assignment of this claim was not accepted by William, and that he never made any claim thereunder. The court further found, as facts, that there was no consideration paid by William Thalheimer, or by any one in his behalf, to Ignatz Thalheimer, for the conveyance of the real estate, and that the same was entirely without consideration, except as stated in the decision. The court further finds that, at the time of receiving the conveyances, William Thalheimer had in his possession three notes given to him by Ignatz Thalheimer,—one of which was dated on the 12th day of November, 1879, and was for $2,500; another of which was dated on the 15th day of January, 1880, and was for $3,000; and another of which was dated on the 19th day of April, 1881, for $3,000; but that in fact there was nothing due from Ignatz to William upon such notes. Exceptions were taken to the findings that there was no consideration paid by William for the real estate, and that there was nothing due upon these notes.

These exceptions present the serious questions for consideration upon this appeal. The amount of these notes, with the interest accrued thereon at the time of the conveyance of the real estate to William, was $10,605.76. It was stipulated upon the trial that the value of the real estate conveyed was $11,-000. It appears from the evidence that William was a prosperous business man, residing in Louisville, Ky.; that his father, Ignatz Thalheimer, resided in the city of Rochester, and was engaged in buying notes and mortgages, and loaning money. The plaintiff introduced in evidence the testimony of Ignatz Thalheimer, taken before a referee, in which he testified that at the time of the conveyance he owed his son William on the three notes $8,500, besides the interest; that one of the notes was given in 1879; he believed one was given in 1880, and one in 1881; that these notes were given up to him by his son William when he executed and delivered the conveyances of the real estate in question. These notes were, at the request of the plaintiff, produced in court by the witness, and the notes were by the plaintiff put in evidence, and are of the dates and amounts found by the court. Each of the notes was signed by the defendant Ignatz Thalheimer. The witness further testified that each of the notes was given for money loaned to him by his son William; that his son sent him the money from time to time to loan for him. The defendant William testified, in substance, that he advanced money to his father from time to time to invest; that he had an agreement with him that he was to be liable to him for the money so advanced; that he sent the money to him for which the notes were given, etc. This evidence is undisputed. It is corroborated by some of the exhibits, especially that of No. 1, which is a letter dated Richmond, Ky., January 10, 1878, and is a letter from William to his father, in which he states that he sends him by bearer $1,000, which, with the other $1,200, makes now $2,200; and states that his father would have to guaranty this to him; that he could not let it go under any other consideration. It appears to us that under this evidence the trial court erred in finding that there was no consideration for the deeds, and that there was in fact nothing due upon the notes. The learned judge, in his opinion, states that it was not clear just when the money was advanced by William to his father; and then comments upon the discrepancy in the testimony of Ignatz and William as to the dates. But it does not appear to us that this should be conclusive. They each testified that the money was sent from time to time. True, they differed somewhat as to dates; for each relies upon his recollection, and, after the lapse of so many years, it is not strange that their recollection in reference to dates should vary. Indeed, had they agreed perfectly, there might be ground for suspicion that they had concocted a story to aid them in defrauding creditors. The court further proceeds to state that the purpose for which the money was advanced was to lend it for William, and that it was not a loan to Ignatz, and the fact that Ignatz received money to

lend for William did not make him liable to repay the money; that under the evidence of William his father was to guaranty the loans which he made, and that it was a sufficient answer to this to say that such an agreement would be valid only if in writing; that the liability was not made out, because, if there was a guaranty, the guarantor is liable upon it only upon default of the principal debtor, etc. In this view we think the learned trial court has overlooked the fact that Ignatz, on receiving the money, made and delivered to his son promissory notes therefor. The notes made him liable to the son for the money loaned, with the interest that should accrue thereon. It is true that William stated in his letter that his father would have to guaranty the money sent to him; that he could not let it go under other considerations. But what did he mean by this further than that he should look to his father for the money sent him? The money does not appear to have been loaned out by the father in the name of his son. On the contrary, it appears that, as to some of it, he invested it in real estate, taking the title in his own name. It consequently appears to us that he was liable upon the notes as maker, and that the question in reference to the liability of a guarantor is not involved in the case.

It is contended that the assignment by Ignatz to William of the cause of action against Hays & Thalheimer, for about $15,000, indicates a fraudulent intent on the part of Ignatz. Had this claim been valid for that amount, its transfer, in connection with the real estate, would have vested in William property to the value of about $26,000, which would be largely in excess of any claim which he had against his father; and it would tend to show an intention to hinder and delay the creditors of Ignatz; and, had William become a party to this, the cause of action might have been made out. But the court has found that William did not accept the transfer of this claim, and consequently no inference of fraud by reason of its transfer can exist, so far as William is concerned. If Ignatz actually owed his son William $10,605.76 upon these notes, William had the right to collect that sum; and the payment of him in money, or the transfer to him of property of that value, would not be in fraud of the rights of other creditors.

Upon the trial the defendant William offered in evidence a note executed by Ignatz Thalheimer to Yette Thalheimer for $3,000, together with the bond executed by Ignatz to William. These papers were objected to by the plaintiff, and the counsel for the defendant offered to show that William was liable on his father's note to Yette Thalheimer for $3,000; that his father was obliged to make him good for that liability by the bond; that the payments made by the witness to her were made in good faith, upon these instruments, at his father's request. The objection of the plaintiff was sustained, the evidence was excluded, and the defendants excepted. At the time of the conveyance of the real estate in question it appears that William delivered to his mother 10 promissory notes, of $200 each; that 4 of them have since been paid. It appears that the amount of the principal and interest due upon the notes was something less than the value of the real estate conveyed; and it appears to us that the defendant William had the right to show that he had paid this difference. If he could have shown that Ignatz was owing Yette; that William was liable to Yette for the amount, and that he held the bond of his father as security; and that the 10 $200 notes were delivered to her by the direction of his father, and a part of them had been paid,—it was important evidence, as bearing upon his good faith, and as to whether he had paid full value for the real estate conveyed to him.

The trial court held that the judgment of Yette Thalheimer, recovered against Ignatz Thalheimer, for $8,266.25, was void as against the creditors of Ignatz. The plaintiffs, however, have a right to attack this judgment only upon the theory that it is an apparent lien upon the real estate of Ignatz. It is not a lien upon the real estate if the conveyances to William are valid. It

is only in event that the conveyances to William should be adjudged invalid that it becomes necessary to determine whether this judgment creates a valid lien upon the real estate.   We therefore do not, at this time, regard it necessary to consider that question.   We do not hold that the evidence did not warrant the conclusion that the conveyances to William were fraudulent as against the creditors of Ignatz Thalheimer; but, independently of the finding upon the question of consideration, effect cannot, on this review, be given to such conclusion, as it is not seen that it was not influenced to some extent by the finding upon that question.   The judgment should be reversed, and a new trial ordered, costs to abide the final award of costs.   So ordered.

BRADLEY and DWIGHT, JJ., concurred.